NOTT, J.,
concurring:
This case is one of extraordinary hardship. So far as the real intent of the claimants is concerned it appears, first, that. an estimate was made to Congress by the officer charged with that duty, stating the expense of total construction of the piers and abutments as about $24 per cubic yard; second, that the claimants’ bid for masonry was just equal to half of the estimated cost, being on an average $12 per yard; third, that the bids of other parties did not vary much from this, being $12.70 a yard for the masonry alone, and $19 for the masonry and cof *512 fer-dams; fourth, that the claimants’ proposal was not to construct the piers and abutments complete, but “ to build the masonry of piers and abutments;” fifth, that the contract executed was prepared by the officers of the Ordnance Department; and, sixth, that at the time of execution those officers inquired of the claimants “if they knew what they were doing,” which I take to mean that, in the officers’ opinion, they were agreeing to do two things for the reasonable price which should be paid for one.
All of these facts and circumstances combine to lead me to the conclusion that the claimants never intended.to do the work of building the coffer-dams; and that when they estimated for masonry at $11 and $13 per yard, they supposed it was to be simply masonry in a place prepared by the other contracting party.
As to the construction given to the contract by the majority of the court, I am not so clear that there is no latent ambiguity in the subject-matter. A contract to construct piers and abutments at a price specified per yard, may include everything relating to the construction, such as excavating for the walls of a cellar, or building coffer-dams for the piers of a bridge, but it may also mean simply the work of constructing the piers, as in this case, out of materials furnished by the other party. On the whole, I prefer to consider it an open question if a similar case should arise.
It is in this connection worthy of note that this court is without equitable power to reform a contract on the one hand, and, on the- other, is required to apply the rigid' rule of the common-law which admits of no explanation of the terms of a contract when there is no latent ambiguity therein. In most countries under the common-law system of jurisprudence there are both courts of law and’courts of equity, and the party who has unwittingly entered into a contract contrary to his real intent may come into a court of equity for relief. It is for this reason, and not from any presumed sacredness of written contracts, that the courts of the common law have been so inexorable in confining parties to the terms of their contracts, for, having another tribunal in which they might procure relief, they decline to go there. Under a different system a different rule should prevail. In Pennsylvania, where there is no court of equity, a party may set up in an action at law any facts which *513 would entitle him to relief in equity. For these suits which come before us we have neither the one system nor the other; and it seems as if restricting’ the court from all’equitable jurisdiction on the one hand, and compelling it to follow those rules which only exist because there is an equitable jurisdiction elsewhere, may be fraught with great danger to both parties, and especially to the Government.
With regard to the claim for damages growing out of the change in the work, occasioned by the subsequent plans and specifications of the Government, I dissent from the opinion of the court. Undoubtedly the Government could secure the right to vary its plans and specifications, and undoubtedly the claimants would be bound to carry out the changed or changing purposes of the Government, but the first plans and specifications exhibited to the claimants, at the time they entered into the contract, fixed, so far as the price was concerned, the nature of the thing contracted for. Any material deviation from that standard must be at the expense of the party requiring the change. Otherwise it would be in the power of one party to substitute an entirely different thing from that bargained for, and compel the other to build it at the original agreed price. In this case the Government not only diminished the quantity of the work, but materially changed its character and augmented its cost; and for the difference in value I think the claimants should recover. •